IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| KENNETH MARTIN GLENN,           ) | |
| )| |
|     Plaintiff,           ) | |
| ) | |
|     v.                                      ) | CV 316-029 |
| ) | |
| MRS. K. WILLIAMS, Chief Counselor;           ) | |
| MRS. WICKER HUMPHRIES, Counselor;           ) | |
| SHAWN EMMONS, Warden; MRS. PRICE,           ) | |
| Deputy Warden; MRS. BAKER, Counselor           ) | |
| (Administration); JEFFREY WIGGINS,           ) | |
| Sergeant; MR. O'NEAL, Unit Manager;           ) | |
| GOVERNOR NATHAN DEAL; HOMER           ) | |
| BRYSON, Commissioner GDC; JAMES           ) | |
| DOE, JSP Deputy Warden Security;           ) | |
| JAMES DOE, Person in Charge of Security           ) | |
| at Johnson Prison; MRS. PERRY, Mental           ) | |
| Health Counselor; JOHNSON STATE           ) | |
| PRISON'S MEDICAL PROVIDER; JOHN           ) | |
| DOE, JSP Medical Director; MR.           ) | |
| JEFFERSON, Deputy Warden; MRS.           ) | |
| ANDREWS/BODI, NA/PA; BRIAN DOE,           ) | |
| Nurse; JOHNSON STATE PRISON'S           ) | |
| PSYCHIATRIC TREATMENT PROVIDER; ) | |
| and JOHN OR JANE DOE, Johnson State           ) | |
| Prison's Psychiatric Provider,           ) | |
| ) | |
|     Defendants.           ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Plaintiff, an inmate at Augusta State Medical Prison in Grovetown, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 regarding events at Johnson State Prison ("JSP") in Wrightsville, Georgia. Plaintiff paid the $400.00 filing fee

and the Court provided him with instructions on how to proceed. (See doc. no. 3.) On September 9, 2016, the Court ordered Plaintiff to amend his complaint on the standard form complaint used by incarcerated *pro se* litigants in the Southern District of Georgia with no more than six handwritten pages attached. (Doc. no. 25, pp. 9-10.) Plaintiff filed an amended complaint in accordance with the Court's instructions (doc. no. 27), and the Court suspended all service deadlines in anticipation of screening the amended complaint pursuant to 28 U.S.C. § 1915A (doc. no. 28). Accordingly, Plaintiff's amended complaint is now before this Court for an initial screening.

I.      **SCREENING OF THE COMPLAINT**

   A.      **BACKGROUND**

Plaintiff names as Defendants (1) Chief Counselor Mrs. K. Williams; (2) Counselor Mrs. Wicker-Humphries; (3) Warden Shawn Emmons; (4) Deputy Warden Mrs. Price; (5) Counselor Mrs. Baker (Administration); (6) Sergeant Jeffrey Wiggins; (7) Unit Manager Mr. O'Neal; (8) Governor Nathan Deal; (9) Commissioner GDC Homer Bryson; (10) JSP Deputy Warden of Security "James Doe"; (11) James Doe, person in charge of security at JSP; (12) Mental Health Counselor Mrs. Perry; (13) JSP's Medical Provider; (14) JSP Medical Director "John Doe"; (15) Deputy Warden Mr. Jefferson; (16) NA/PA Mrs. Andrews-Bodi; (17) Nurse Brian Doe; (18) JSP's Psychiatric Treatment Provider; and (19) JSP's Psychiatric Treatment Provider's Director. (See doc. no. 27, pp. 1, 4.). Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of screening, the facts are as follows.

From January 5, 2016 through May 26, 2016, Defendants Williams, Wicker-Humphries, Emmons, Price, and Baker refused to follow the SOP grievance process,

depriving Plaintiff of his right to file grievances. (Id. at 5.) They also provided Plaintiff with false information in order to confuse him and provoke him to lose his temper. (Id.) Despite writing letters, interview request forms, grievances, and personally speaking with them, they refused to allow him to pursue the grievance process. (Id.)

On several occasions between February 8, 2016 and May 26, 2016, Defendants Williams and Wicker-Humphries retaliated against Plaintiff for filing grievances by placing him in the "hole." (Id. at 6.) Plaintiff repeatedly attempted to get Defendant Wicker-Humphries to sign a grievance on Lt. Donnie Smith for assaulting him, and after months of his repeated entreaties, she ordered him locked in the "hole" in retaliation. (Id.) In addition, when Plaintiff would complain to Defendant Williams about Defendant Wicker-Humphries's behavior and his grievances not being processed, she would threaten Plaintiff with a disciplinary report and also have him locked in the "hole." (Id.)

On February 17, 2016, Defendant Wiggins assaulted Plaintiff. (Id. at 7.) For undisclosed reasons, Defendant Wiggins dragged Plaintiff, face up while handcuffed, for approximately twenty feet before throwing him down on his back. (Id.) Defendant Wiggins then rolled Plaintiff onto his stomach and removed his handcuffs before dragging him face down for another twenty feet. (Id.) Finally, Defendant Wiggins threw Plaintiff on the concrete floor in the shower area. (Id.) Plaintiff remained on the floor approximately twenty minutes before being taken to the medical center on a stretcher. (Id.)

Between March 17, 2016 and May 26, 2016, Defendant O'Neal repeatedly threatened Plaintiff with terroristic threats. (Id.) He allegedly told Plaintiff if Plaintiff did not remain quiet "one of his officers or one of his inmates was going to fuck [Plaintiff] up." (Id.) He

followed through on these threats by ordering inmate Quincy Rogers to inject Plaintiff with Staph Infection and four other gang members to assault him. (Id. at 7-8.)

Between March 17, 2016 and May 26, 2016, Defendants Emmons, Williams, Jefferson, and O'Neal ignored Plaintiff's requests for protective custody. (Id. at 8.) Plaintiff's life was in danger because he supplied the Governor with information regarding gangs' smuggling of cell phones into JSP. (Id.) Gang members were also threatening and extorting Plaintiff's mother for money. (Id.) When he expressed his fear and concerns to Defendants Jefferson and O'Neal, they laughed at Plaintiff and refused to place him in protective custody. (Id.)

Between January 6, 2015 and May 26, 2016, Defendants Andrew-Bodi, Price, JSP's Medical Services Provider, and JSP's Medical Director John Doe refused to treat Plaintiff's injured back. (Id. at 9.) Plaintiff's back was originally injured while at Jackson Diagnostics Prison, and he sought medical treatment from Defendant Andrews-Bodi. (Id.) Defendant Andrews-Bodi refused to treat Plaintiff's back and told him to get out of her office. (Id.) Defendants Andrew-Bodi, Price, JSP's Medical Services Provider, and JSP's Medical Director John Doe further refused to treat Plaintiff's back when it was further injured by Defendants Wiggins. (Id.)

Between January 6, 2015 and May 26, 2016, Defendants Andrew-Bodi, Price, JSP's Medical Services Provider, and JSP's Medical Director John Doe also refused to treat Plaintiff's injured wrists and hands. (Id.) Plaintiff originally injured his wrists and hand when he was tased while in handcuffs during his arrest. (Id.) This left his hands swollen and with open burns, causing pain and tingling. (Id.) Defendant Andrews-Bodi told Plaintiff

nothing could be done.  (Id.)

Between January 6, 2015 and May 26, 2016, Defendants Andrew-Bodi, Price, JSP's Medical Services Provider, and JSP's Medical Director John Doe also refused to treat Plaintiff's hemorrhoids.  (Id. at 10.)  Defendants refused to issue Plaintiff treatment supplies, including hydrocortisone, rectal suppositories, diapers, and a donut cushion.  (Id.)

Between April 8, 2016 and April 11, 2016, Defendants Andrew-Bodi, Price, Nurse Brian Doe, JSP's Medical Services Provider, and JSP's Medical Director John Doe also refused to adequately treat Plaintiff's staph infection.  (Id. at 10.)  Plaintiff's infection was oozing with blood and pus, but Defendant Doe only gave him some pills.  (Id.)  By the following Monday, the infection had become so bad that Plaintiff was sent to the emergency room.  (Id.)  Plaintiff contends this was four days later than he should have been sent to the hospital.  (Id.)

Between January 1, 2016 and May 26, 2016, Defendants Perry, Price, JSP's Psychiatric Provider, and JSP's Psychiatric Provider's Director John Doe refused to treat Plaintiff's psychiatric needs.  (Id.)  Plaintiff progressed from depression and anxiety when he first arrived at JSP to the "lowest point and the most deepest desire just to die than [he] even had been in in [his] entire life."  (Id. at 10-11.)  Defendant knew of Plaintiff's need for psychiatric treatment, but failed to do anything and refused to let him see a psychiatrist.  (Id. at 11.)

Finally, during February and March 2016, Defendants James Doe, Deputy Warden of Security, and James Doe, person in charge of security, allowed inmates to smuggle in cell phones against prison policy.  (Id.)  Plaintiff notified both Defendants, in addition to

5

Defendants Deal and Bryson, but they did nothing. (Id.)

### B. DISCUSSION

#### 1. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual

6

enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007).  However, this liberal construction does not mean that the court has a duty to re-write the complaint.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Claim for Denial of Due Process.

Plaintiff fails to state a viable claim against Defendants Williams, Wicker-Humphries, Emmons, Price, and Baker for denial of due process by denying his grievances.  Prisoners do not have a constitutionally-protected liberty interest in a prison's inmate grievance procedure.  Thomas v. Warner, 237 F. App'x 435, 438 (11th Cir. 2007).  Consequently, "Plaintiff's allegations that prison officials failed to comply with the prison's voluntary grievance procedures does not state a due process claim."  Id.

### 3. Plaintiff Fails to State a Claim for Terroristic Threats

Plaintiff also fails to state a viable claim against Defendant O'Neal for threatening him.  In order to establish a constitutional violation, Plaintiff "must allege more than that he has been subjected to verbal taunts[,] [h]owever distressing[,] in order to make a claim that jailers have . . . deprived the [plaintiff] of his constitutional rights."  Edwards v. Gilbert, 867 F.2d 1271, 1274 n. 1 (11th Cir. 1989) (internal quotation omitted); see also Barfield v. Hetzel, No. 2:11CV-1114-WHA, 2015 WL 758490, at *4 (M.D. Ala. Feb. 23, 2015)

7

("Derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation."). Here, Plaintiff alleges nothing more than verbal threats from Defendant O'Neal, other than his fanciful claims discussed below. Accordingly, Plaintiff fails to state a claim against Defendant O'Neal for terroristic threats.

### 4. Plaintiff Fails to State a Claim for Being Injected with Staph Infection and Assaulted by Inmates at the Instruction of Defendant O'Neal.

Plaintiff also fails to state a viable claim against Defendant O'Neal for ordering gang members to assault him and inject him with staph infection because Plaintiff's claim is frivolous. A claim is frivolous where "it relies on factual allegations that are 'clearly baseless,' which includes allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" Gary v. United States Gov't, 540 F. App'x 916, 917 (11th Cir. 2013) (citing Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)). Stated otherwise, "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." Id.

Here, Plaintiff's claim is clearly baseless. Plaintiff offers no evidence connecting Defendant O'Neal to his staph infection or assault, only his beliefs. That Plaintiff was assaulted by fellow inmates and contracted staph infection does not implicate Defendant O'Neal. Without more than Plaintiff's fanciful and unsubstantiated allegations, Plaintiff cannot connect Defendant O'Neal to either his staph infection or his assault by fellow inmates. Therefore, Plaintiff fails to state a claim upon which relief can be granted against Defendant O'Neal for ordering gang members to inject him with staph infection.

8

### 5. Plaintiff Fails to State a Claim for Deliberate Indifference to His Safety.

Plaintiff has also failed to state a viable Eighth Amendment claim for deliberate indifference to his safety regarding Defendants Williams, Emmons, Price, O'Neal, and Jefferson's refusal to place him in protective custody. A prison inmate has a constitutional right to be protected from violence and from assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981). An Eighth Amendment violation for deliberate indifference to safety occurs when (1) there exists a substantial risk of serious harm, (2) the defendants are deliberately indifferent to the risk, and (3) there is causation. Smith v. Reg'l Dir. Of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010). "To find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).

A plaintiff asserting a deliberate indifference claim must satisfy both the objective and subjective inquiries. For the subjective component, a plaintiff must prove that the prison official acted with deliberate indifference. Miller v. King, 384 F.3d 1248, 1260-61 (11th Cir. 2004). This requires a showing that prison officials acted with a sufficiently culpable state of mind with regard to the serious condition at issue. Id. For the objective component, a plaintiff must establish defendants disregarded a known risk by failing to respond to it in an objectively reasonable manner. Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 620 (11th Cir. 2007). Prison officials who act reasonably cannot be found liable under the Cruel

and Unusual Punishments clause. Farmer v. Brennan, 511 U.S. 825, 844 (1994). An official responds to a known risk in an objectively unreasonable manner if "he knew of ways to reduce the harm but knowingly declined to act" or if "he knew of ways to reduce the harm but recklessly declined to act." Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995).

In addition, "merely negligent failure to protect an inmate from attack does not justify liability under § 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*). Before a prison official's failure to act can constitute deliberate indifference, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility." Id. at 1537.

Here, Plaintiff has failed to plead sufficient facts to demonstrate the existence of a substantial risk of serious harm. Plaintiff claims repeatedly he was afraid for his life, but alleges no facts indicating he was in danger. Indeed, despite his purported fear of death for filing grievances and retaliation, he has filed multiple grievances and even filed this lawsuit. None of Plaintiff's allegations indicate he was in such danger as to need protective custody. Accordingly, Plaintiff cannot demonstrate a risk of serious harm, and he has failed to state a claim for relief.

### 6. Plaintiff Fails to State a Claim for Deliberate Indifference to His Medical Needs.

Plaintiff also fails to state a viable Eighth Amendment claim for deliberate indifference to his back injury, wrists and hands injury, hemorrhoids, and staph infection. To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege that: (1) he had a serious medical need – the objective component, (2) a defendant acted with

deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).

To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To satisfy the subjective component, Plaintiff must allege that a defendant: (1) was subjectively aware of a serious risk of harm, and (2) disregarded that risk (3) by following a course of action which constituted "more than [gross] negligence." Id. at 1326-27.

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

11

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.  Moreover, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference.  See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010).

Plaintiff admits that he was seen by numerous medical professionals at JSP regarding all these maladies and given multiple medical exams.  (Doc. no. 27, pp. 9-10.)  In addition, Plaintiff was given medication for his staph infection and ultimately sent to the emergency room.  (Id. at 10.)  Plaintiff has failed to allege facts that show his requested treatment from Defendants was necessary to treat his back, wrist and hands, hemorrhoids, and staph infection.  Indeed, the only support given in Plaintiff's complaint is that Defendants refused to give him the treatment he demanded.  Because this only shows a disagreement with the prescribed treatment, it cannot form the basis for a deliberate indifference claim.  Smith, 375 F. App'x at 910.

### 7. Plaintiff Fails to State a Claim Against Defendant Price for Supervisory Liability.

Plaintiff also fails to state a viable § 1983 claim against Defendant Price for retaliatory punishment.  Plaintiff alleges Defendant Price "had knowledge of the problem also yet did nothing to remedy the situation."  Stated otherwise, Defendant Price cannot be held liable merely in light of her supervisory position. "Supervisory officials are not liable under § 1983 for

the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendant Price liable for Defendants Williams and Wicker-Humphries retaliatory punishment, Plaintiff must demonstrate that either (1) they actually participated in the alleged constitutional violation, or (2) there is a causal connection between their actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff only alleges Defendant Price knew about the retaliatory punishment. Nowhere does Plaintiff allege Defendant Price was the individual responsible for placing him in the "hole."

Moreover, Plaintiff does not show that Defendant Price was directly involved with Plaintiff's punishment by alleging she viewed a grievance Plaintiff wrote about his problem. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff]

13

relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Likewise, Plaintiff must allege a causal connection between Defendant Price and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the

subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not draw the necessary causal connection to any alleged constitutional violation. Simply alleging she knew about it does not show personal participation by Defendant Price in the retaliatory punishment, let alone suggest she has instituted a policy or custom causing such a problem. In sum, Plaintiff has not shown Defendant Price actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against Defendant Price for retaliatory punishment.

### 8. Plaintiff Fails to State a Claim Against Defendants Deal and Bryson.

Plaintiff also fails to state a viable § 1983 claim against Defendants Deal and Bryson, who Plaintiff alleges are "going to have to explain why they did nothing." Stated otherwise, Defendants Deal and Bryson cannot be held liable merely in light of their supervisory position. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendants Deal and Bryson liable, Plaintiff must demonstrate that either (1) they actually participated in the alleged constitutional violation, or (2) there is a causal connection between their actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff alleges he informed both Defendants that inmates were smuggling in cell phones against prison rules and regulations. Nowhere does Plaintiff allege Defendants Deal or Bryson were the individuals responsible for removing contraband cell phones from JSP.

Moreover, Plaintiff does not show that Defendants Deal and Bryson were directly involved with the cell phone extortion ring by merely alleging they viewed a letter and/or a grievance Plaintiff wrote about his problem. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable

for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Likewise, Plaintiff must allege a causal connection between Defendants Deal and Bryson and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not draw the necessary causal connection to any alleged constitutional violation. First, as discussed below, there was no underlying constitutional violation. Second, simply writing a letter informing them prisoners possess contraband cell phones does not show personal participation by Defendants Deal and Bryson in the resulting extortion of Plaintiff for reporting them, let alone suggest they have instituted a policy or custom causing such a problem.

17

In sum, Plaintiff has not shown Defendants Deal and Bryson actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against Defendants Deal and Bryson.

### 9. Plaintiff Fails to State a Valid Claim Based on An Alleged Violation of Prison Regulations.

To the extent Plaintiff also complains cell phones were allowed into JSP by Defendants James Doe, Deputy Warden of Security, and James Doe, person in charge of security, in violation of prison and state policy, he fails to state a constitutional claim. An allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (noting that many prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and that "such regulations are not designed to confer rights on inmates"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (finding district court properly dismissed prisoner's claim concerning prison officials' alleged failure to follow prison procedures with respect to grievances); Taylor v. White, Civ. No. 11-0377-CG-N, 2012 WL 404588, at *5 (S.D. Ala. Jan. 10, 2012) ("A claim based on a prison official's failure to follow prison regulations or state regulations, without more, simply does not state a claim for deprivation of a constitutional right."), *adopted by*, 2012 WL 403849 (S.D. Ala. Feb. 7, 2012). Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendants JSP Warden of Security and James Doe Deputy Warden of Security based on any alleged violation of prison regulations.

**II.     CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS DISMISSAL** of Plaintiff's claims for (1) denial of due process by denying his grievances against Defendants Williams, Wicker-Humphries, Emmons, Price, and Baker; (2) terroristic threats against Defendant O'Neal; (3) ordering gang members to assault him and inject him with staph infection against Defendant O'Neal; (4) Eighth Amendment claim for deliberate indifference to his safety against Defendants Williams, Emmons, Price, O'Neal, and Jefferson; (5) Eighth Amendment claim for deliberate indifference to his back injury, wrists and hands injury, hemorrhoids, and staph infection against Defendants Price, JSP Medical Provider, John Doe JSP Medical Director, Jefferson, Andrews-Bodi, and Nurse Brian Doe; (6) failure to enforce prison cell phone regulations against Defendants James Doe Deputy Warden of Security and James Doe person in charge of security; (7) supervisory liability claims against Defendant Price; and (8) all claims against Defendants Nathan Deal and Homer Bryson.  Because no claims remain against them, the Court further **REPORTS** and **RECOMMENDS DISMISSAL** of Defendants Emmons, Baker, O'Neal, Deal, Bryson, James Doe Deputy Warden of Security, James Doe in charge of security, JSP Medical Provider, John Doe JSP Medical Director, Jefferson, Andrews-Bodi, Nurse Brian Doe, Deal, and Bryson.

In a companion Order, the Court has allowed Plaintiff's First Amendment claims for (1) retaliatory punishment for filing grievances against Defendants Williams and Wicker-Humphries; (2) excessive force claims against Defendant Wiggins; and (3) Eighth Amendment deliberate indifference to psychiatric needs claims against Defendants Perry, Price, JSP

Psychiatric Provider, and Director of JSP Psychiatric Provider to proceed.

SO REPORTED and RECOMMENDED this 15th day of February, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA